ALAN SHAW, as a Taxpayer and Voter in and of the City of Asheville, North Carolina, on Behalf of Himself and all Other Taxpayers and Citizens of said City who may Desire to Join in This Action, v. THE CITY OF ASHEVILLE, a Municipal Corporation, The Honorable EARL ELLER, Mayor of said City, WILLIAM F. ALGARY, ROBERT P. CROUCH, J. WALTER McRARY, CLARENCE E. MORGAN, FRANK MULVANEY, and THEODORE B. SUMNER, Members of the City Council of said City, J. WELDON WEIR, City Manager of said City, and ASHEVILLE CABLEVISION, INC., a North Carolina Corporation.

(Filed 20 January, 1967.)

1. **Injunctions § 8—**

     A citizen and taxpayer of a municipality may maintain an action to enjoin the performance by the city of an agreement granting a corporation the right to install cablevision within the municipality when such citizen alleges facts disclosing the possibility of financial loss to himself as a taxpayer and asserts the agreement is void or *ultra vires* the city.

2. **Controversy Without Action § 2—**

     The contention that the court was without power to find facts in addi-

tion to those agreed upon by the parties and submitted to the court, is immaterial when some of the findings by the court are conclusions of law and the other findings by the court are not material to the determination of the controversy.

**3. Municipal Corporations § 4—**

A municipal corporation has only such powers as are granted by its charter and by general law, construed together, and all reasonable doubt concerning the existence of a power must be resolved against its existence.

**4. Municipal Corporations § 18—**

An agreement giving a private corporation permission to install cable-vision facilities within the municipality, with power to lay the necessary cables under the streets and sidewalks and upon poles, and providing that such right should be exclusive, is a franchise and not a license.

**5. Same—**

Whether an agreement of a municipality constitutes a franchise or a license must be determined by the nature and provisions of the agreement and not the nomenclature employed by the parties.

**6. Same—**

The definitions of "public utility" and "franchise" as contained in G.S. 62-3 are not controlling in determining whether an agreement of a municipality constitutes a franchise or a license, since the definitions of the statute do not purport to be authoritative definitions of those terms as used elsewhere.

**7. Same—**

A municipality is not limited to granting franchises to a "public utility."

**8. Same—**

Where the charter of a city provides procedural restrictions upon the granting by the city of franchises, such city must follow such procedural restrictions of its charter in granting a franchise regardless of whether the authority to grant the particular franchise is conferred upon the city by G.S. 160-2 or by its own charter.

**9. Same—**

The charter of defendant municipality stipulated that it should not grant a franchise until the question had been submitted to the qualified voters of the city, that the franchise should be in the form of an ordinance and should, when apposite, fix rates, fares and charges to be made, and should provide for forfeiture of the franchise to secure efficiency of public service at reasonable rates. *Held:* An agreement of the municipality grant-ing the right to a private corporation to construct and operate equipment for cablevision within the municipality which fails to conform to each of such charter restrictions is void.

APPEAL by plaintiff from *Falls, J.,* at the 2 May 1966 Session of BUNCOMBE.

The plaintiff, as citizen, taxpayer and registered voter of the city of Asheville, brought this action on behalf of himself and all

other persons similarly situated against the city, its mayor, members of its City Council, its city manager, and the Asheville Cablevision, Inc., hereinafter called Cablevision, to enjoin the performance of an agreement between the city and Cablevision on the ground that it is void because the city has no authority to enter into it.

The case was tried without a jury upon an agreed statement of facts. The following is a summary of the material facts so stipulated:

The City Code of Asheville was enacted as Chapter 16 of the Private Laws of 1923. (This Act is entitled, "An Act To Amend, Revise And Consolidate The Statutes That Constitute The Charter of The City of Asheville.") Section 212 provides:

> "No franchises shall be granted by the City of Asheville, until the question has been submitted, at a special or general election to the qualified voters of the city, and until a majority of those voting upon the proposition have voted in favor of granting such franchises * * *"

Section 213 provides:

> "No franchise shall be granted for a longer time than 35 years from the date of the granting of such franchise. Every grant of every franchise or right, as hereinbefore provided, shall make provision by way of the forfeiture of the grant or otherwise, for the purpose of compelling compliance with the terms of the grant and to secure efficiency of public service at reasonable rates, * * * and before any such grant of any such franchise or right shall be made, the proposed specific grant shall be embodied in the form of an ordinance, with all the terms and conditions that may be right and proper, including a provision for fixing a rate, fares, and charges to be made if the grant provides for the charging of a rate, fares and charges."

The city and Cablevision entered into a written agreement, which is designated "Lease-License Agreement." It provides:

> "The Lessor [the city] grants to the lessee [Cablevision], its successors or assigns the right to erect, install, construct, reconstruct, replace, remove, repair, maintain and operate in or upon, under, above, across and from the streets, avenues, highways, sidewalks, bridges and other public ways * * * in the City of Asheville, all equipment * * * and apparatus * * * for the purpose of receiving, amplifying, transmitting and distributing * * * television, radio, electrical and electronic energy, pictures, sounds, * * * and communications, uni-di-

rectional and multi-directional, of every nature and description
* * * and to otherwise engage in the business * * * gen-
erally known as * * * community antenna television and
audio communications services, * * *"

The agreement provides it will continue in force for 20 years, the
rights granted will be exclusive and, in consideration of the grant,
Cablevision will pay the city certain percentages of its gross receipts
from monthly service .charges to the users of its service. Cablevision
also agrees to furnish to the city hall, fire and police stations and
schools of the city certain facilities and services free of charge. The
agreement requires Cablevision to file with the city a full schedule
of the charges to be made to its subscribers for its services, and for-
bids any preference, prejudice or disadvantage as to rates or other-
wise, but contains no provision requiring such rates to be reasonable
or subjecting them to regulation by the city or by any other au-
thority. It provides that Cablevision will, at its expense, replace
and restore paving or other street or sidewalk surface which is dis-
turbed. It authorizes Cablevision to trim trees and provides restric-
tions upon its location of poles. It requires Cablevision to maintain
its system in reasonable repair, to furnish adequate and efficient
community antenna reception services to all residents of the city
served by any public utility and to comply with all rules and regu-
lations of the Federal Communications Commission or other autho-
rized agency of the United States Government. It provides for its
recision by the city in event of default by Cablevision not corrected
within a specified time and that upon its termination, by recision or
otherwise, Cablevision will transfer all "its right, title and interest"
in the plant and equipment to the city (there being no covenant
against encumbrances at such time).

"Said agreement was entered into without submitting the ques-
tion of the issuance of said right, authority, license and franchise to
a vote of the qualified voters of the City of Asheville," without the
enactment of an ordinance relating thereto and without the prior is-
suance to Cablevision of a certificate of public convenience and
necessity by the North Carolina Utilities Commission.

The system proposed to be constructed and operated by Cable-
vision includes a master television antenna which is to receive tele-
vision signals from distant channels. These signals are then to be
increased in intensity by electronic means and relayed to a network
of coaxial cables running throughout the community and into in-
dividual homes. In some areas of the city the cables are to be placed
in underground conduits beneath streets and sidewalks. In other
areas they are to be suspended on poles, existing poles to be used

wherever necessary agreements with the owners thereof can be made. The city's share of the gross receipts from such operation by Cablevision will be paid into its general operating fund.

Prior to entering into the agreement, the city officials negotiated with various persons interested in supplying such service. They advertised for bids. Several bids having been received, the City Council adopted a resolution accepting the bid of Cablevision and authorizing the mayor and city clerk to execute the agreement, which they did.

The plaintiff alleges that the agreement is void, that he will be irreparably damaged if it is carried out, and that he has no adequate remedy at law.

In its judgment under the heading "FINDINGS OF FACT," the superior court stated:

"4. That on October 7th, 1965, the Council, by resolution, authorized and directed the Mayor to execute a Lease-License Agreement with Asheville Cablevision, Inc., which said agreement was duly and lawfully entered by the City of Asheville and Asheville Cablevision, Inc.;

"5. That the entering of the Lease-License Agreement did not constitute the granting of a franchise, and the operation of a cable television system, or community antenna television system, is not a public utility;

"6. That the construction, operation, and maintenance of a community antenna system, as described in the Lease-License Agreement, will not be an obstruction, nor will it unreasonably interfere with streets, avenues, highways, sidewalks, bridges, and other public ways now existing, or extensions or additions thereto, in the City of Asheville."

Under the heading "CONCLUSIONS OF LAW," the court, in its judgment, stated:

"1. That the City of Asheville had the legal right to enter the Lease-License Agreement with Asheville Cablevision, Incorporated.

"2. That the Lease-License Agreement does not constitute the granting of a franchise to a public utility.

"3. That the terms and conditions of the Lease-License Agreement violate no Constitutional right of the plaintiff.

"4. That the resolution of the Asheville City Council of October 7th, 1965, and the Lease-License Agreements, entered, were lawful and proper acts of the defendants."

The court thereupon denied the plaintiff's prayer for relief and adjudged the agreement to be a valid act of the city.

The plaintiff assigns as error the entry of the judgment and each of the above quoted provisions thereof.

*Parker, McGuire & Baley by Frank M. Parker and Richard A. Wood, Jr., for plaintiff appellant.*

*O. E. Starnes, Jr., Vanwinkle, Walton, Buck & Wall by Herbert L. Hyde, Attorneys for City of Asheville.*

*G. Edison Hill, Attorney for Asheville Cablevision, Inc.*

*Kennedy, Covington, Lobdell & Hickman by Charles V. Tompkins, Jr., Amicus Curiæ.*

LAKE, J. The plaintiff is stipulated by the parties and found by the superior court to be a citizen and taxpayer of the city. As such, he was authorized to maintain this action on behalf of himself and all others similarly situated. In *Wishart v. Lumberton,* 254 N.C. 94, 118 S.E. 2d 35, suit was instituted by a citizen and taxpayer of the defendant city to enjoin it from using a city owned park as a parking lot for motor vehicles. This Court held that a demurrer to the complaint was properly overruled, saying, through Rodman, J., "If the governing authorities were preparing to put public property to an unauthorized use, citizens and taxpayers had the right to seek equitable relief." Similarly, in *Merrimon v. Paving Company,* 142 N.C. 539, 55 S.E. 366, though holding that the complaint was demurrable for failure to state a cause of action, the Court, through Connor, J., said, "That a citizen, in his own behalf and that of all other taxpayers, may maintain a suit in the nature of a bill in equity to enjoin the governing body of a municipal corporation from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the taxpayers — such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate property, etc., — is well settled." See also 52 Am. Jur., Taxpayers' Actions, §§ 4, 14, 17 and 28, where the right of the taxpayer to sue for equitable relief is likened to that of a stockholder in a private corporation to sue in equity for a wrong done or about to be done to the corporation.

The present action is distinguishable from *Angell v. Raleigh,* 267 N.C. 387, 148 S.E. 2d 233, in which, at the time the taxpayer instituted his action, the city had adopted an ordinance providing for the issuance of "licenses" for the operation within the city of community antenna television systems, but had not issued or contracted to issue a license thereunder. This Court held that, in such situation,

the plaintiff taxpayer was not authorized to maintain a suit for declaratory judgment to test the validity of the ordinance. In the present case, it is stipulated that the city of Asheville has made an agreement with Cablevision and the suit is brought to enjoin the performance of that specific agreement.

The agreement here in question, among other things, purports to grant to Cablevision the right to lay cables under the streets, sidewalks and other public ways of the city of Asheville, and to erect poles and lines of cable therein for the purpose of carrying on thereby a business for private profit. Such action will, of necessity, require substantial expenditures to repair and restore the pavements or other surfaces of such public ways. The agreement provides that such expenses will be borne by Cablevision. If, however, the purported grant of rights to Cablevision is, as the plaintiff contends, unlawful and void, the undertakings by Cablevision in the agreement would be without consideration and unenforceable. *Elizabeth City v. Banks*, 150 N.C. 407, 64 S.E. 189. Part or all of the expense of such repair to the streets and other public ways may fall upon the taxpayers of the city. This, without more, is sufficient to give to the plaintiff the right to institute and maintain this action to determine the validity of the agreement and to enjoin the performance thereof if it be unlawful. We are, therefore, brought to the question of the validity of the agreement between the city and Cablevision.

The plaintiff assigns as error the inclusion in the judgment of the above quoted paragraphs 4, 5 and 6 under the caption "Findings of Fact." He contends that since this matter was submitted to the superior court upon an agreed statement of facts, the court had no authority to find additional facts. It is unnecessary for us to determine the validity of this contention for the reason that paragraphs 4 and 5 are, in reality, conclusions of law reviewable by us (see *Woodward v. Mordecai*, 234 N.C. 463, 67 S.E. 2d 639) and the finding, in paragraph 6 that the construction and maintenance of the proposed system will not "unreasonably interfere" with streets and other public ways, is not material to the determination of the validity of the agreement if, as the plaintiff contends, the proposed use of the streets is one beyond the authority of the city to grant. In such case, the degree to which the unlawful use of the streets will impair their use by the plaintiff and others so situated is not material. The reasonableness or unreasonableness of such interference is of importance only where the municipality has been granted authority to permit the use of its streets for the kind of operation proposed. See *Clayton v. Tobacco Co.*, 225 N.C. 563, 35 S.E. 2d 691.

It is well established that a municipal corporation of this State

"has only such powers as are granted to it by the General Assembly in its specific charter or by the general laws of the State applicable to all municipal corporations, and the powers granted in the charter will be construed together with those given under the general statutes." *Riddle v. Ledbetter*, 216 N.C. 491, 5 S.E. 2d 542. "Any fair, reasonable doubt concerning the existence of the power is resolved against the corporation." *Elizabeth City v. Banks, supra.*

The fact that this agreement is denominated by the parties a "Lease-License Agreement" is not controlling. Its nature, not its title, determines the power of the city to enter into it. Paragraph 1 purports to grant to Cablevision, its successors or assigns, "the right to erect, install, construct, reconstruct, replace, remove, repair, maintain and operate in or upon, under, above, across and from the streets * * * and other public ways * * * in the City of Asheville, all equipment, facilities, appurtenances and apparatus of any nature, for the purpose of receiving, amplifying, transmitting and distributing * * * television, radio, electrical and electronic energy, pictures, sounds, signals, impulses and communications, * * * of every nature and description * * *." Obviously, this is not a right possessed by inhabitants and citizens of Asheville in general. In any event, that is made clear by paragraph 3 of the agreement, which provides expressly that the right so "to use and occupy said streets * * * shall be exclusive."

In Black's Law Dictionary we find: "FRANCHISE. A special privilege. conferred by government on individual or corporation, and which does not belong to citizens of country generally of common right." In Ballentine's Law Dictionary, it is said "[I]t is the privilege of doing that which does not belong to the citizens of the country generally by common right which constitutes the distinguishing feature of a franchise." See also 23 Am. Jur., Franchises, § 2; 37 C.J.S., Franchises, § 1.

In *Elizabeth City v. Banks, supra,* it is said, "A franchise is property, intangible, it is true but none the less property — a vested right, protected by the Constitution — while a license is a mere personal privilege, and, except in rare instances and under peculiar conditions, revocable." To the same effect, see 23 Am. Jur., Franchises, § 3.

In *New Orleans Gas Co. v. Louisiana Light Co.,* 115 U.S. 650, 659, 6 S. Ct. 252, 29 L. ed. 516, Harlan, J., speaking for the Court, said, "[T]he right to dig up the streets and other public ways of New Orleans, and place therein pipes and mains for the distribution of gas for public and private use, is a franchise, the privilege of exercising which could only be granted by the State, or by the mu-

nicipal government of that city acting under legislative authority."
In *Crescent City Gaslight Co. v. New Orleans Gaslight Co.*, 27 La.
Ann. 138, 147, the Supreme Court of Louisiana said:

> "The right to operate gas works and to illuminate a city, is
> not an ancient or usual occupation of citizens generally. No one
> has the right to dig up the streets and lay down gas pipes, erect
> lamp posts and carry on the business of lighting the streets and
> the houses of the city of New Orleans, without special authority
> from the sovereign. It is a franchise belonging to the State and
> in the exercise of the police power, the State could carry on the
> business itself, or select one or several agents to do so."

Both the appellants and the appellees argue at length in their
briefs their respective views as to whether Cablevision, by engaging
in the operation described in the agreement, would become a "public
utility" subject to regulation by the North Carolina Utilities Com-
mission. The brief of the *amicus curiæ* is devoted entirely to this
question. In our view, the determination of that question is not
necessary to the decision of this case and we do not now determine
it. The term "franchise," as used by the courts and by textwriters,
is not limited to a special right granted to a public utility, as de-
fined in G.S. 62-3. See *Taylor v. Racing Asso.*, 241 N.C. 80, 84 S.E.
2d 390; *State v. Felton*, 239 N.C. 575, 80 S.E. 2d 625. The definitions
of "public utility" and "franchise" contained in G.S. 62-3 are not
controlling in determining the nature of the present agreement. By
the express terms of that statute, those definitions set forth the
meaning to be given those terms "as used in" Chapter 62, and do not
purport to be authoritative definitions of those terms as used else-
where. We are presently concerned with the meaning of "franchise"
as used in the City Code (charter) of Asheville.

Even if Cablevision be a public utility as defined in G.S. 62-3,
it is not required that it obtain from the Utilities Commission a
certificate of public convenience and necessity before a franchise be
issued by the city to it. Such certificate is required by G.S. 62-110
before such a public utility may commence construction of its plant
or operation of its business. Thus, whether Cablevision's proposed
operation would or would not subject it to the authority of the North
Carolina Utilities Commission, the validity of the agreement be-
fore us is not determined by the fact that no such certificate had
been issued prior to the execution of the agreement.

G.S. 160-2(6) provides that a municipal corporation is author-
ized "to grant upon reasonable terms franchises for public utilities."
In *Power Co. v. Membership Corp.*, 253 N.C. 596, 117 S.E. 2d 812,

Rodman, J., speaking for the Court, said, "Every town has by statute G.S. 160-2(6), the power to grant franchises to public utilities, that is, the right to engage within the corporate boundaries *in business of a public nature.*" (Emphasis added.) The illustrative list of such businesses there given is not confined to businesses within the definition of "public utility" in G.S. 62-3. It may well be that the term "public utility" as used in G.S. 160-2 is a broader term than it is as used in Chapter 62 of the General Statutes. If not, this would not lead to the result that the agreement in question is not a franchise. It would mean only that a city or town may not grant a franchise for an operation such as that now proposed, unless such operation be within the regulatory power of the Utilities Commission, or authority to grant a franchise for such an operation is contained in the charter of the particular municipal corporation. See *Elizabeth City v. Banks, supra.*

We hold that the agreement in question undertakes to grant to Cablevision a franchise. We come, consequently, to the questions of whether the city of Asheville has the authority to grant such franchise and, if so, whether it is authorized to grant one by the procedure followed in this instance.

If, but only if, the proposed operation is a "public utility," as that term is used in G.S. 160-2, a franchise, otherwise valid, would be within the authority conferred upon Asheville, and every other municipal corporation of this State, by that statute. If not, a franchise, otherwise valid, would be within the implied authority conferred upon Asheville by §§ 212 and 213 of the City Code, *i. e.*, the city charter (Private Laws of 1923, Chapter 16, §§ 239 and 240). These sections, by their terms, impose limitations upon the power of the city to grant franchises. They do not contain the term "public utility." The necessary implication is that the Legislature intended the city to have the power to grant franchises free from the limitation of G.S. 160-2 that the grantee be a "public utility." Nevertheless, the authority, whether conferred upon the city by G.S. 160-2 or by its own charter, is subject to the procedural restrictions imposed by the city's own charter upon its power to grant a franchise.

Section 212 of the city's charter provides, "No franchises shall be granted by the City of Asheville, until the question has been submitted, at a special or general election to the qualified voters of the city, and until a majority of those voting upon the proposition have voted in favor of granting such franchises." It is stipulated that there has been no such submission to the voters. Section 213 of the charter provides that the grant of a franchise must be in the form of an ordinance, which this agreement, of course, is not. Section 213

also provides that the grant must contain a provision for "fixing a rate, fares and charges to be made if the grant provides for the charging of a rate, fares and charges." The agreement in question plainly contemplates that Cablevision will make charges for its services but it contains no provision for fixing such charges. Section 213 also provides that, "Every grant of every franchise * * * shall make provision by way of the forfeiture of the grant or otherwise * * * to secure efficiency of public service at reasonable rates." There is no such provision in the agreement.

It follows that the agreement between the city and Cablevision has not been adopted by the procedures which are prescribed by the city charter as conditions precedent to its validity. The agreement is, therefore, beyond the authority of the city and is void.

It is unnecessary for us to determine, and we do not determine, whether the agreement is also void as an attempt to grant an exclusive emolument in violation of Article I, § 7, or a monopoly in violation of Article I, § 31, of the Constitution of North Carolina.

The plaintiff is entitled to the entry of a judgment granting him the injunctive relief prayed for in the complaint, and this action is remanded to the superior court for the entry of such judgment.

Reversed and remanded.