**The CITY OF TYLER, Texas, Appellant,**

v.

**TELEVISION CABLE SERVICE, INC.,
Appellee.**

**No. 711.**

Court of Civil Appeals of Texas,
Tyler.

March 22, 1973.

Rehearing Denied April 19, 1973.

Jack Skeen, Jr., Tyler, for appellant.

Donald Carroll, Tyler, for appellee.

McKAY, Justice.

This is a suit by the City of Tyler seeking a declaratory judgment that an ordinance of the City granting a permit to appellee to use the streets, alleys, public ways and places of the City for the operation of a community antenna television system (CATV) is void. From an adverse judgment, the City brings this appeal.

The City of Tyler is a home rule city. The ordinance in question was passed on third reading on October 2, 1970, and such ordinance granted to appellee a permit to operate and maintain a cable television system in the City and sets out the conditions, regulations and penalties accompanying the permit. Appellee has been operating a CATV system in the City since the enactment of the ordinance. There has never been an election by the qualified voters on such permit or franchise.

The City maintains in its only point that the ordinance of October 2, 1970 is void because it was never submitted to the qualified voters of the City as required by Section 35 [1] and Section 38 [2] of the Home

1. "SECTION 35. The ownership, control and use of the streets, highways, alleys, parks and dedicated public places of the City of Tyler are inalienable to said City except by ordinance passed by a majority of the Commission of the City approved by a majority of the qualified voters of said City voting at an election held for the purpose of approving or disapproving the granting of any franchise or easement involving the right to use the same either along, across, over or under the same as hereinafter provided; and no franchise granting any such right or ease-ment shall ever be valid unless express-ly granted and exercised in compliance with the terms hereof and of the ordi-nance granting the same; and no act or omission of the City, its governing body, officers or agents shall ever be con-strued to confer or extend by estoppel or indirection, any right, franchise or easement not expressly granted by ordi-nance as above provided."

2. "SECTION 38. The City of Tyler shall have the power to grant any franchise or right mentioned in the preceding sections

Rule Charter of the City of Tyler. The appellee contends that Sections 35 and 38 of the City Charter are void insofar as they purport to limit the power of the City Commission to grant a franchise or easement involving the use of the streets by requiring approval of the ordinance at an election held for that purpose. Appellee says they are void as being in conflict with Art. 1181, Vernon's Ann.Tex.St.

Appellant City says that the ordinance is a purported grant of a franchise and therefore to be valid must be approved by a vote of the qualified voters as set out by Sections 35 and 38.

There is no dispute that by the provisions of Art. 1175, Sec. 12, a home rule city has exclusive control over its streets and alleys. Section 12 provides that the home rule city has the power "To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas company, or any other character of public utility *without first obtaining the consent of the governing authorities expressed by ordinance* and upon paying such compensation as may be prescribed and upon such condition as may be provided by any such ordinance. * * *" (Emphasis added.)

Art. 1181, V.A.T.S. provides:

"No charter or any amendment thereof framed or adopted under this charter, (sic), shall ever grant to any person, firm or corporation any right or franchise to use or occupy the public streets, avenues, alleys or grounds of any such

city, but the *governing authority of any such city shall have the exclusive power and authority* to make any such grant of any such franchise or right to use and occupy the public streets, avenues, alleys, and grounds of the city. If, at any time, *before any ordinance granting a franchise takes effect*, a petition shall be submitted to the governing authority signed by five hundred of the bona fide qualified voters of the city, then the governing body shall submit the question of granting such franchise to a vote of the qualified voters of the city, at the next succeeding general election." (Emphasis added.)

It is noted that the language of Art. 1181 is that the "governing authority of any such city shall have the *exclusive* power and authority" to grant a permit or a franchise for the use or occupancy of the public streets and alleys. We hold that the meaning of the statute is to the effect that *only* the City Commission has the power and authority to grant a permit or franchise to the appellee here. Therefore, the provisions in the charter of the City that make it mandatory that such ordinance be submitted to and approved by a vote of the qualified voters of the City before it becomes valid and effective must fall as in conflict with the statute.

However, Art. 1181 provides a referendum method for such an ordinance to be approved by the qualified voters of the City, and that is, by petition of at least five hundred qualified voters, filed before any ordinance takes effect, asking for such an election. That was not done in this

hereof by ordinance, which ordinance shall not be passed finally until its third and final reading, which readings shall be at three separate regular meetings of the governing body, the last of which shall take place not less than thirty days from the first; no ordinance granting a franchise shall pass any reading except by a vote of a majority of the Commission, and such ordinance shall not take effect until the same has been submitted by referendum to the qualified voters of said City at an election held for that pur-

pose, and shall have been approved by a majority of the qualified voters voting at said election, which said election shall not be held until at least thirty (30) days notice thereof shall have been given by publication, publishing a notice of said election once each week for four weeks preceding the holding of the same, the first publication of which shall be had at least thirty (30) days prior to the date of election excluding the date of the first publication and the date of election."

case. When that is done it then becomes mandatory for the City Commission to call an election to be held "at the next succeeding general election."

Art. XI, Sec. 5 of the Constitution of Texas provides:

"* * * No charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State. * * *"

In McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105 (1927) the Texas Supreme Court, speaking through Judge Pierson, said:

"We find that the general law reposes the power and authority to grant a franchise to use and occupy the streets and public grounds of a city with the governing body—i. e., the city council or board of commissioners."

In McCutcheon the charter of the City of Dallas provided:

"In case a franchise is refused by the board of commissioners then the matter may be submitted to the qualified voters on petition, as hereinbefore provided, and a failure to finally pass on an application within six months after the filing of such application shall be construed as a refusal. The board of commissioners in passing an ordinance granting a franchise may provide therein that it shall not take effect until the same shall have been submitted to and approved by a majority of the qualified voters voting thereon at a general election."

The Supreme Court then said:

"This last paragraph is in direct conflict and inconsistent with article 1181, Revised Statutes, above quoted, wherein it provides that the governing body of the city shall have exclusive power and authority to make a grant of such a franchise. Said article 1181 provides

also that only when such governing body shall grant a franchise to use or occupy the public streets, etc., and a petition, as provided for, is submitted to the governing body, then the governing body shall submit the question of granting the franchise to the voters of the city."

In Stahl, et al. v. Miller, et al., 63 S.W. 2d 578 (Tex.Civ.App., Amarillo, 1933, wr. ref.), the City of Borger had a charter provision that after the governing body of the city had granted a franchise by ordinance a petition by at least ten per cent of the qualified voters as determined by the number of votes cast in the last city election, would require the governing authority to call an election for approval or disapproval of said ordinance. Such ten per cent would be less than five hundred and the court said:

"In our opinion there is no escape from the conclusion that, in requiring fewer than 500 qualified petitioners, the charter provision conflicts with the statute which is general as it applies to all cities of a certain class."

Appellant City cites two cases decided by the Supreme Court of North Carolina, (Kornegay v. City of Raleigh, 269 N.C. 155, 152 S.E.2d 186; Shaw v. Asheville, 269 N.C. 90, 152 S.E.2d 139, both in 1967) in which the court held that a franchise agreement between the city and a CATV applicant was void for failing to comply with a city charter provision that the question must be submitted to the voters of the city. The Court held in both these cases that the grant was a franchise, and in each case the city charter provided that approval of the qualified voters is necessary to the validity of a franchise ordinance. In the absence of any statute or other prohibition the cities there, as in Texas, would have authority to require such approval by the electors of the cities. The charters in both Raleigh and Asheville required approval by the electors; such election for approval had never been held. These cases are distinguishable from the case at bar.

**326**

In Aberdeen Cable TV Service, Inc. v. Aberdeen, 176 N.W.2d 738 (Sup.Ct., S.D., 1970) cited by appellant City, there was a state statute which required any franchise granted to any public utility to be submitted to a vote of the electors. That case is not in point here because of the difference in the statute in South Dakota from our statute.

We think the language of City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202 (Comm.App.1927) is significant (p. 205):

> "In a word, as long as the state does not, in its Constitution or by general statute, cover any field of the activity of the cities of this state, any given city is at liberty to act for itself. But, when the state itself steps in and makes a general law and applies such law to all cities of a certain class, then we submit that no city of the same class is authorized, under our Constitution, to enact contrary legislation. If this principle has not already been adopted as the settled law of this state, then it should be so understood from this time forward."

The latest expression by a Texas court to come to our attention is in Sierra Club v. Austin Independent School District, 489 S.W.2d 325 (Tex.Civ.App., Austin, 1973, n. w. h.), and the opinion reiterates (p. 332) the principle which governs this appeal:

> "* * * When the people adopt a home rule charter, that instrument becomes the fundamental law of the municipality in the same manner that the Constitution is the fundamental law of the state. The only limitation upon these powers of the home rule city is that *the charter may not be in conflict with general laws of the state or in contravention of the Constitution.*" (Citing Cases.) (Emphasis added.)

We hold that the grant embodied in the ordinance passed on third reading on October 2, 1970, was a franchise grant to appellee to operate a CATV system in the City of Tyler and that such ordinance is valid. We further hold that the City did not have the authority to require by its charter that the grant of such a franchise must be approved by the qualified voters in the City because the Legislature by Art. 1181 had specified the method by which such action of the governing authority of the City must be submitted for a vote of the residents of the city, and such method is by petition of at least five hundred qualified voters presented to the governing authority before the effective date of any such franchise ordinance. Appellant's point of error is overruled.

The judgment of the trial court is affirmed.