TEXFI INDUSTRIES, INC., A CORPORATION V. THE CITY OF FAYETTEVILLE, A
MUNICIPAL CORPORATION, BETH FINCH, MAYOR, AND J. L. DAWKINS, WAYNE
WILLIAMS, MILDRED EVANS, BILL HURLEY, GEORGE MARKHAM,
MARION GEORGE, MEMBERS OF THE CITY COUNCIL OF THE CITY OF FAYETTE-
VILLE, AND A. D. JOHNSON, ACTING TAX COLLECTOR FOR THE CITY OF FAYETTE-
VILLE

No. 7912SC38

(Filed 18 December 1979)

1. **Municipal Corporations § 2.4— standing of corporation to attack annexation ordinance**

    A corporation had standing to assert that an annexation statute has been applied to it in an unconstitutional manner by allegedly denying it effective notice of annexation and by allegedly denying it an opportunity to register its opposition to the annexation in a manner equal to the right of opposition exercisable by resident voters.

2. **Municipal Corporations § 2— annexation referendum —no vote by corporation —equal protection**

    A corporation is not denied equal protection of the laws because corporations have no right to vote in an annexation referendum held pursuant to G.S. 160A-25.

3. **Municipal Corporations § 2— hearing on annexation—notice by publication —due process**

    Notice by publication of a public hearing on annexation pursuant to G.S. 160A-24 does not provide inadequate notice to parties affected by the annexation in violation of their right to due process, since the General Assembly may annex land without notice to anyone.

APPEAL by both plaintiff and defendants from *McConnell, Judge.* Judgment entered 1 November 1978 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 20 September 1979.

Plaintiff-appellant, Texfi Industries, Inc. (Texfi), is a Delaware corporation with a place of business in Cumberland County, North Carolina, and its corporate headquarters in Greensboro, North Carolina. Texfi owns personal property in Cumberland County and leases real property under an agreement which requires Texfi to pay all real property taxes on the leased premises.

On 27 September 1976 the Fayetteville City Council, defendants herein, adopted, pursuant to N. C. Gen. Stat. § 160A-24 *et seq.*, a resolution to consider the annexation of a certain tract of land within which the property leased by appellant and other commercial and industrial enterprises, but no residences were located. The resolution set a public hearing for 25 October 1976 at the City Hall and notice of the hearing was published in *The*

*Fayetteville Observer* on 28 September 1976, 5 October 1976, 12 October 1976 and 19 October 1976. The hearing was held, no opposition to the hearing was voiced and the subject property was annexed at the hearing. There is no dispute that the appellees complied with all of the statutory requirements of Chapter 160A, Article 4A, Part 1 of the North Carolina General Statutes for the purpose of effecting the annexation.

Plaintiff commenced this action on 8 December 1977 alleging that the annexation statute was unconstitutional on its face and as applied because the notice provisions in N.C. Gen. Stat. § 160A-24 are not sufficient to give reasonable notice to parties affected by the annexation and because the statute, which gives resident voters but not corporations in the area proposed for annexation a right to approve or reject the annexation by referendum, denies plaintiff equal protection of the law.

Defendant-appellees, in timely fashion, filed a Motion to Dismiss pursuant to Rule 12(b) of the North Carolina Rules of Civil Procedure, asserting that the complaint failed to state a claim upon which relief could be granted, lack of subject matter jurisdiction, lack of plaintiff's capacity and standing to sue, laches and equitable estoppel.

On 1 November 1978 the trial court granted defendants' motion to dismiss on the grounds that the Complaint failed to state a claim upon which relief can be granted and that plaintiff, as a corporate lessee, lacks standing to sue. Plaintiff appealed from the judgment, and defendants cross assign as error the failure to dismiss on the other grounds cited in their motion to dismiss.

*McCoy, Weaver, Wiggins, Cleveland & Raper by L. Stacy Weaver, Jr. and Reginald M. Barton, Jr. for plaintiff appellant.*

*Robert C. Cogswell, Jr. for defendant appellees.*

CLARK, Judge.

## I. STANDING

[1] We agree with appellees that there is a fine line between the issue of standing and the issue of failure to state a claim. One may have standing to assert a claim which the Court in its final analysis decides has no merit. The gist of standing is whether

there is a justiciable controversy being litigated among adverse parties with substantial interest affected so as to bring forth a clear articulation of the issues before the court. The often-stated rule that a taxpayer has no standing to challenge questions of general public interest that affects all taxpayers equally, *Green v. Eure*, 27 N.C. App. 605, 608, 220 S.E. 2d 102 (1975), *cert. denied*, 289 N.C. 297, 222 S.E. 2d 696 (1976), does not apply where a taxpayer shows that the tax levied upon him is for an unconstitutional, illegal or unauthorized purpose, *Wynn v. Trustees*, 255 N.C. 594, 122 S.E. 2d 404 (1961), that the carrying out of the challenged provision "will cause him to sustain personally, a direct and irreparable injury," *Nicholson v. State Education Assistance Authority*, 275 N.C. 439, 448, 168 S.E. 2d 401, 406 (1969), or that he is a member of the class prejudiced by the operation of the statute, *Appeal of Martin*, 286 N.C. 66, 209 S.E. 2d 766 (1974). More particularly, if an annexation "is neither authorized by law nor made under the color of law it is void and is subject to attack by anyone having a sufficient personal interest in the litigation." *Taylor v. City of Raleigh*, 290 N.C. 608, 618, 227 S.E. 2d 576, 582 (1976). We find that appellant has standing to assert that the annexation statute has been applied to it in an unconstitutional manner by allegedly denying appellant effective notice of annexation and by allegedly denying appellant opportunities to register its opposition to the annexation in a manner equal to the right of opposition exercisable by resident voters. Here appellant asserts that its own constitutional rights have been injured and the claims asserted are not frivolous. No direct economic injury need be shown in order to have standing to assert that one's constitutional rights have been violated. However, whether a party has asserted a claim upon which relief can be granted is an entirely different question.

## II. EQUAL PROTECTION

[2]    Texfi contends that it has been denied equal protection of the laws because corporations have no right to vote as "qualified resident voters" in a referendum on the question of municipal extension, held pursuant to N.C. Gen. Stat. § 160A-25, notwithstanding the fact that Texfi, like resident taxpayers, must pay all real and personal property taxes located within the municipality. We recognize that "[a] State has no more power to deny to corporations the equal protection of the law than it has to individual

citizens." *Gulf, Colorado & Sante Fe Railway Co. v. Ellis*, 165 U.S. 150, 154, 17 S.Ct. 255, 41 L.Ed. 666 (1897). We do not agree, however, that appellant has been denied equal protection of the law in the instant case.

Our first task under traditional equal protection analysis is to identify the nature of Texfi's interest, and in this regard we hold that corporations have no fundamental, inalienable rights of suffrage, either spelled out in or implied from the due process clause and law of the land clause of, respectively, the United States Constitution and North Carolina Constitution. This simple holding reveals the tip of an iceberg concerning the constitutional rights of corporations.

It has long been the rule that with respect to "property rights," a private corporation is a "person" within the meaning of both the equal protection and due process clause of the Fourteenth Amendment. *Kentucky Finance Corporation v. Paramount Auto Exchange Corporation*, 262 U.S. 544, 43 S.Ct. 636, 67 L.Ed. 1112 (1923). However, it was also established that the "liberty" guarantee of the Fourteenth Amendment applied to natural persons only and not to such artificial persons as corporations. *Pierce v. Society of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). This result followed from a conception of liberty, held by our Founding Fathers, as exemplified by Thomas Jefferson's language in the Declaration of Independence and Article I, section 1 of the North Carolina Constitution, that liberties were inalienable divine endowments which by their very nature could not inhere in secular institutions. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 229, 96 S.Ct. 2532, 49 L.Ed. 2d 451 (1976) (Mr. Justice Stevens, dissenting). Similarly, this result followed from the reasoning that ". . . the only rights [a corporation] can claim are the rights which are given to it in that character, and not the rights which belong to its members as a citizen of a state . . . ." *Bank of Augusta v. Earl*, 38 U.S. (13 Pet.) 519, 587, 10 L.Ed. 274 (1839).

In *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 55 L.Ed. 2d 707, 98 S.Ct. 1407 (1978), however, the United States Supreme Court rejected this dichotomy between the liberty and property interests of corporations as "an artificial mode of analysis, untenable under decisions of this Court." 435 U.S. at

778-79. A new test was propounded by Mr. Justice Powell: "Whether or not a particular guarantee is 'purely personal' or is unavailable to corporations for some other reason depends on the nature, history, and purpose of the particular constitutional provision." 435 U.S. at 778-79 fn. 14. The opinion went on to explain that the argument that corporations, as creatures of the State, have only those rights granted them by the State, was "an extreme position [which] could not be reconciled either with the many decisions holding state laws invalid under the Fourteenth Amendment when they infringe protected speech by corporate bodies." *Id.* Nonetheless, the Court recognized that "[c]ertain 'purely personal' guarantees, such as the privilege against compulsory self-incrimination, are unavailable to corporations and other organizations because the 'historic' function of the particular guarantee has been limited to the protection of individuals." *Id.* Similarly, the opinion noted that corporations have been denied equality with individuals in the enjoyment of a right to privacy. *California Bankers Assn. v. Schultz*, 416 U.S. 21, 65-67, 39 L.Ed. 2d 812, 94 S.Ct. 1494 (1974).

Following the analysis prescribed by the Supreme Court, we hold that the plaintiff-corporation has no fundamental right to vote in the annexation referendum. The history, policy, and purposes are quite clear. The right to vote is the right to participate in the decision as to how the social-political organ will act. The right to vote derives from the fundamental notion of the social compact which forms the very foundation of a constitutional democracy. Corporations are limited artificial entities, designed primarily for the purpose of managing economic resources and by their very nature cannot share an identity with the broader humane, social, economic, ideological and political concerns of the human body politic and which by their very nature cannot be members of the body politic. There are practical considerations as well. Given the development of modern corporate law it is quite easy for a single corporation to have many subsidiaries and affiliates; consequently, corporations could easily become political hydra, which, unlike individual resident citizens, could multiply their voting power merely by creating property-owning subsidiaries in the area proposed for annexation. Such a potential result would clearly be in contravention of the principle that "a State may not dilute a person's vote to give weight to other in-

terests." *Evans v. Cornman*, 398 U.S. 419, 422-423, 90 S.Ct. 1752, 26 L.Ed. 2d 370 (1970). Finally, we note that the primary interests which the plaintiff corporation has at stake are its property interests. Under North Carolina law, property interests alone cannot establish voting rights. Article I, section 11 of the North Carolina Constitution explicitly states that "[a]s political rights and privileges are not dependent upon or modified by property, no property qualification shall affect the right to vote or hold office."

Having found that corporations, as artificial entities have no fundamental inalienable rights of suffrage, and noting that to our knowledge corporations have never been found to be a suspect class, we find, under traditional equal protection analysis and for the reasons stated above, that there was a rational basis for the classification of persons allowed to participate in annexation referenda under N.C. Gen. Stat. § 160A-24, -25. *See also, Rexham Corporation v. Town of Pineville*, 26 N.C. App. 349, 216 S.E. 2d 445 (1975).

## III. DUE PROCESS

[3] We similarly find no merit in plaintiff's argument that notice by publication as set forth in N.C. Gen. Stat. § 160A-24 denied appellants due process rights to notice. In North Carolina municipal corporations are political subdivisions of the State. Article VII, section 1 of the North Carolina Constitution vests in the General Assembly the power to create and destroy any political subdivision as well as the power to change the boundaries of any such subdivision. No notice need be given to anybody, whether citizen, resident, nonresident or taxpayer in order for the General Assembly to carry out this provision. As was explained by Mr. Justice Moody, for the United States Supreme Court:

"... In all these respects [the extent of municipal boundaries and powers] the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by an provision of the Constitution of the United States. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason . . . there is nothing in the Federal Constitution which protects them from these injurious consequences. . . ."

*Hunter v. Pittsburg*, 207 U.S. 161, 179, 28 S.Ct. 40, 52 L.Ed. 151 (1907). *See also, Holt Civic Club v. City of Tuscaloosa*, 99 S.Ct. 383 (1978). Since the General Assembly may annex land without notice to anyone it naturally follows that any notice, whether by publication or otherwise, is more than sufficient. *See generally*, 56 Am. Jur. 2d Municipal Corporations § 62 (1971).

As we have found the claims of plaintiff-appellant to be without merit, we need not consider the various defenses asserted by defendant-appellees.

The trial court's ruling that plaintiff had no standing to sue is reversed.

The trial court's rulings that plaintiff's equal protection and procedural due process claims failed to state claims upon which relief could be granted are approved, and the judgment is

Affirmed.

Judges HEDRICK and MARTIN (Harry C.) concur.