W.D. GOLDSTON, JR., JAMES E. HARRINGTON, AND CITIZENS, TAXPAYERS AND BOND-HOLDERS SIMILARLY SITUATED, PLAINTIFFS v. STATE OF NORTH CAROLINA AND MICHAEL F. EASLEY, GOVERNOR, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, DEFENDANTS

No. COA04-593

(Filed 20 September 2005)

## Jurisdiction— subject matter—standing—taxpayers

The trial court properly dismissed plaintiffs' complaint challenging a $125 million loan from the Highway Trust Fund (HTF) for general expenditures authorized by the General Assembly for the 2002-03 fiscal year and the $80 million transfer authorized by the Governor in its summary judgment order based on lack of standing to bring suit, because: (1) the cases that plaintiffs rely upon to show they have standing do not authorize citizens to sue for a court declaration that past government action, and unthreatened recurrences, are unlawful; (2) plaintiffs' complaint did not claim that they suffered injury from the collection of the taxes which benefit the HTF, but instead the complaint challenged only certain withdrawals of taxpayer money from the HTF which affected the present plaintiffs in the same way that it affected all citizens and taxpayers of this state; (3) although plaintiffs filed an affidavit alleging that a demand for action by the appropriate authorities had been refused, the trial court excluded this affidavit from consideration and plaintiffs have not appealed from this decision; (4) plaintiffs' action as citizens was for an advisory declaration, which they had no standing to seek; and (5) although plaintiffs' complaint was purportedly filed on behalf of affected holders of Highway Bonds, plaintiffs do not own any of these bonds.

Appeal by plaintiffs from judgment entered 29 January 2004 by Judge Joseph R. John, Sr., in Wake County Superior Court. Heard in the Court of Appeals 13 June 2005.

*Boyce & Isley, PLLC, by G. Eugene Boyce, R. Daniel Boyce, and Philip R. Isley; and Brannon Strickland, PLLC, by Anthony M. Brannon, for plaintiff appellants.*

*Attorney General Roy Cooper, by Chief Deputy Attorney General Grayson G. Kelley, Special Deputy Attorney General Norma S. Harrell, and Special Deputy Attorney General John F. Maddrey, for defendant appellees.*

McCULLOUGH, Judge.

Plaintiffs, W.D. Goldston, Jr., and James E. Harrington, appeal from summary judgment entered in favor of defendants, the State of North Carolina and Governor Michael F. Easley. We conclude that the trial court properly dismissed plaintiffs' complaint in its summary judgment order because they lacked standing to bring suit.

## Facts

The North Carolina Highway Trust Fund (hereinafter "HTF") was established by the General Assembly pursuant to Chapter 692 of the 1989 Session Laws (hereinafter "the Act"). The Act created a special account with the State Treasury comprised of funds from the following sources: a portion of the revenue from a motor fuel excise tax; a portion of revenue from an alternative fuel excise tax; a portion of revenue from an excise tax on carriers using fuel purchased outside of the State; a portion of the revenue from a motor vehicle use tax; the revenues from motor vehicle title and registration fees; and interest and income earned by the funds in the account. 1989 N.C. Sess. Laws ch. 692, § 1.1. As originally enacted, the Act provided that the HTF could only be used to fund the following items: expenses to administer the HTF; specific projects of the Interstate Highway System; specific urban loop highways designated by number and location; supplemental appropriations to cities for city streets; and supplemental appropriations for specific secondary road construction identified by a minimum traffic flow. *Id.* The General Assembly also enacted legislation directing the State Treasurer to make an annual transfer of $170 million from the HTF to the General Fund, which is used to pay the general obligations of this state. *Id.* § 4.1. Thereafter, the General Assembly provided for additional transfers to be made from the HTF to the General Fund in specific fiscal years. 2001 N.C. Sess. Laws ch. 424, § 34.24(c).

In a 1996 referendum, the voters of this state authorized the issuance of up to $950 million in bonds to expedite HTF projects. Pursuant to this authority, in November 1997 the State Treasurer issued and sold $250 million in bonds (hereinafter "Highway Bonds"), which are secured by the full faith and credit of this state. The debt service that must be paid on these bonds is approximately $25 million annually, which is paid from amounts deposited in the HTF. Though no additional bonds have been issued, the State Treasurer is authorized, upon approval of the Council of State, to issue and sell an additional $700 million in Highway Bonds.

For reasons related to a budget shortfall, the General Assembly borrowed $125 million from the HTF for the 2002-03 fiscal year. *See* 2002 N.C. Sess. Laws ch. 126 §§ 2.2(g), 26.14. The borrowed money was placed in the General Fund. In addition, Governor Michael F. Easley issued executive orders which authorized the Office of State Management and Budget to transfer Funds from the HTF to the General Fund, as necessary, to further ease the effects of the budget shortfall. Pursuant to one of these executive orders, $80 million was transferred from the HTF to the General Fund on 8 February 2002.

On 14 November 2002, plaintiffs W.D. Goldston, Jr., and James E. Harrington filed an action on behalf of themselves and "citizens, tax-payers and bondholders similarly situated" challenging the $125 million loan from the HTF authorized by the General Assembly for the 2002-03 fiscal year and the $80 million transfer authorized by the Governor. The complaint alleged that these withdrawals from the HTF violated the North Carolina Constitution in that (1) funds were applied to an unauthorized purpose in violation of N.C. Const. art. V, § 5; (2) the Governor exceeded the authority given by N.C. Const. art. III, §§ 4 and 5 and violated art. VI, § 7; and (3) bondholder contracts were impaired in violation of N.C. Const. art. I, § 19. Plaintiffs sought declaratory relief and a judgment requiring the return of any wrongfully withdrawn funds.

The parties entered into an extensive stipulation as to the facts of the case, and both parties moved for summary judgment. While awaiting a hearing on the summary judgment motions, plaintiffs filed an untimely motion to consider additional evidence in the form of plaintiff Goldston's affidavit. In this affidavit, Goldston stated that he had contacted the State Attorney General and an employee in the Governor's Office and requested that each of them investigate the legality of removing money from the HTF for general expenditures, but that he never received a response. The trial court denied the motion to consider Goldston's affidavit.

Prior to the adjudication of the summary judgment motions, plaintiffs withdrew their request for a judgment directing the return of funds to the HTF. Thus, the only relief sought by plaintiffs was a declaration that the Governor and the General Assembly had acted unlawfully.

In an order entered 29 January 2004, the trial court granted summary judgment in defendants' favor and dismissed plaintiffs' claims. From this order, plaintiffs now appeal.

Analysis

The dispositive issue on appeal is whether plaintiffs had standing to pursue their lawsuit against defendants in superior court. We hold that they did not.

"If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16, *disc. review denied*, 359 N.C. 632, 613 S.E.2d 688 (2005). Standing consists of three main elements:

"[1] 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical[;] . . . [2] the injury [must be] fairly traceable to the challenged action of the defendant[;] and . . . [3] it [must be] likely, as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' "

*Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 364 (1992) (citations omitted)), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 628-29 (2003). This Court may review the standing of litigants in a particular case on its own motion and for the first time on appeal; our review on this issue is *de novo. Henke v. First Colony Builders, Inc.*, 126 N.C. App. 703, 704, 486 S.E.2d 431, 432, *appeal dismissed, disc. review denied, cert. denied*, 347 N.C. 266, 493 S.E.2d 455 (1997).

"Generally, an individual taxpayer has no standing to bring a suit in the public interest." *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001). However, the taxpayer may have standing if he can demonstrate that

[a] tax levied upon him is for an unconstitutional, illegal or unauthorized purpose[;] that the carrying out of a challenged provision "will cause him to sustain personally, a direct and irreparable injury[;]" or that he is a member of the class prejudiced by the operation of [a] statute.

*Texfi Industries v. City of Fayetteville*, 44 N.C. App. 268, 270, 261 S.E.2d 21, 23 (1979) (citations omitted), *disc. review allowed in part and denied in part*, 299 N.C. 741, 267 S.E.2d 671, *aff'd*, 301 N.C. 1, 269 S.E.2d 142 (1980).

A taxpayer who otherwise lacks standing may nevertheless bring an action on behalf of a public agency or political subdivision, if " 'the proper authorities neglect or refuse to act.' " *Guilford County Bd. of Comrs. v. Trogdon*, 124 N.C. App. 741, 747, 478 S.E.2d 643, 647 (1996) (quoting *Branch v. Board of Education*, 233 N.C. 623, 625, 65 S.E.2d 124, 126 (1951)), *disc. review denied*, 345 N.C. 753, 485 S.E.2d 52-53 (1997). "To bring this type of action, taxpayers must show they are a taxpayer of the public agency or political subdivision and must further establish that either: 1) there has been a demand on and refusal by the proper authorities to institute proceedings for the protection of the interests of the agency or subdivision; or 2) a demand on the proper authorities would be useless." *Id.* (citing *Branch*, 233 N.C. at 626, 65 S.E.2d at 126-27).

The present plaintiffs claim to have standing under the foregoing principles and also by virtue of a doctrine they refer to as "constitutional standing." By "constitutional standing" plaintiffs refer to the axiom that, "[i]f the governing authorities [are] preparing to put public property to an unauthorized use, citizens and taxpayers ha[ve] the right to seek equitable relief." *Wishart v. Lumberton*, 254 N.C. 94, 96, 118 S.E.2d 35, 36 (1961). However, the cases that have applied this axiom have involved action the government was preparing to take, which threatened the rights of the suing taxpayers, and which could still be restrained. *See Lewis v. White*, 287 N.C. 625, 216 S.E.2d 134 (1975) (holding that citizens could bring an action to prevent the building commission from constructing an unauthorized building with tax funds appropriated solely for the purpose of building an art museum), *superseded on other grounds by statute as recognized in Corum v. University of North Carolina*, 330 N.C. 761, 786, 413 S.E.2d 276, 292 (1992); *Shaw v. Asheville*, 269 N.C. 90, 96, 152 S.E.2d 139, 144 (1967) (holding that citizens and taxpayers of a municipality had standing to bring a suit challenging the validity of an agreement between a municipality and a private company which authorized the company to, *inter alia*, lay cables under municipal streets and set cable poles because the taxpayers could incur significant expense if the agreement was later adjudged void); *Wishart*, 254 N.C. at 96, 118 S.E.2d at 36 (holding that a municipality's citizens and taxpayers had standing to seek an injunction prohibiting the municipality from unlawfully converting a public park into a parking lot). Thus, these cases do not authorize citizens to sue for a court declaration that past government action, and unthreatened recurrences, are unlawful. *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52 (noting that standing requires an actual or immi-

nent injury that is likely to be redressed by a favorable decision). To the contrary, "[i]t is no part of the function of the courts to issue [such] advisory opinions." *Wise v. Harrington Grove Cmty. Ass'n,* 357 N.C. 396, 408, 584 S.E.2d 731, 740, *reh'g denied,* 357 N.C. 582, 588 S.E.2d 891-92 (2003).

The present plaintiffs are North Carolina taxpayers. However, their complaint did not claim that they suffered injury from the collection of the taxes which benefit the HTF. Rather, the complaint challenged only certain withdrawals of taxpayer money from the HTF, which affected the present plaintiffs in the same way that it affected all citizens and taxpayers of this state. Thus, plaintiffs lacked standing to bring their action directly as injured taxpayers. *See Texfi Industries,* 44 N.C. App. at 270, 261 S.E.2d at 23.

Moreover, although plaintiffs filed an affidavit alleging that a demand for action by the appropriate authorities had been refused, the trial court excluded this affidavit from consideration. Because plaintiffs have not appealed from this decision of the trial court, the exclusion of the affidavit is binding, and we must rule as if no evidence of demand and refusal existed. *See Kelly v. Kelly,* 167 N.C. App. 437, 443, 606 S.E.2d 364, 369 (2004) (noting that an order which is not appealed from is " 'the law of the case' ") (citation omitted). Further, we are unpersuaded that the record indicates that such a demand would have been futile. Thus, plaintiffs failed to demonstrate that they had derivative standing as taxpayers to sue on behalf of a public agency or subdivision. *See Guilford County Bd. of Comrs.,* 124 N.C. App. at 747, 478 S.E.2d at 647.

The present plaintiffs are also North Carolina citizens, and they contend that, as citizens, they had "constitutional standing" to bring their action in superior court. However, during the course of the litigation before the trial court, plaintiffs abnegated their prayer for *mandamus.* Thus, plaintiffs were no longer seeking to have the allegedly wrongly withdrawn funds replenished, and their remaining requests for relief sought only a judicial declaration that the legislative and executive branches should not have made the challenged withdrawals from the HTF and should not make such withdrawals again. Notably, plaintiffs did not allege that a recurrence of the alleged misconduct was imminent. Therefore, plaintiffs' action as citizens was for an advisory declaration, which they had no standing to seek. *See Neuse River Found., Inc.,* 155 N.C. App. at 114, 574 S.E.2d at 52 (requiring, as a basis for standing, that the relief sought by a plaintiff be likely to redress his claimed injury); *see also*

McGHEE v. BANK OF AM. CORP.

[173 N.C. App. 422 (2005)]

*Wise*, 357 N.C. at 408, 584 S.E.2d at 740 (noting that advisory court opinions are improper).

Furthermore, although plaintiffs' complaint was purportedly filed on behalf of affected holders of Highway Bonds, plaintiffs do not own any of these bonds. Therefore, even assuming *arguendo* that a bondholder would have standing to sue over the HTF withdrawals at issue in the instant case, the named plaintiffs could not demonstrate that they were members of this class, whose repayment was alleged to be jeopardized by the withdrawals. *See Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52 (requiring, as a basis for standing, that a suing plaintiff suffer injury); *Texfi Industries*, 44 N.C. App. at 270, 261 S.E.2d at 23 (requiring, as a basis for standing, that a suing taxpayer be a member of the class that is prejudiced).

Thus, as of the hearing on the cross-motions for summary judgment, the facts and circumstances of the instant case revealed that the present plaintiffs lacked standing to pursue their action against defendants. Accordingly, to the extent that the trial court's order is a dismissal for lack of standing, it is affirmed. This holding makes it unnecessary for us to address the remaining issues briefed by the parties.

Affirmed.

Judges TIMMONS-GOODSON and BRYANT concur.